Cite as: 574 U. S. ____ (2014)      1

GINSBURG, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 14A358

_____

## NORTH CAROLINA, ET AL. *v.* LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, ET AL.

ON APPLICATION TO RECALL AND STAY

[October 8, 2014]

The application to recall and stay the mandate of the United States Court of Appeals for the Fourth Circuit in case Nos. 14-1845, 14-1856 & 14-1859, presented to The Chief Justice and by him referred to the Court is granted and the preliminary injunction entered by the United States District Court for the Middle District of North Carolina on October 3, 2014, is hereby stayed pending the timely filing and disposition of a petition for a writ of certiorari. Should the petition for a writ of certiorari be denied, this stay shall terminate automatically. In the event the petition for a writ of certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court.

Justice Ginsburg, with whom Justice Sotomayor joins, dissenting.

I would deny the stay application.

For decades, §5 of the Voting Rights Act of 1965, through its preclearance requirement, worked to safeguard long obstructed access to the ballot by African-American citizens. In *Shelby County* v. *Holder*, 570 U. S. ___ (2013), this Court found the Act's §4 coverage formula obsolete, a ruling that effectively nullified §5's preclearance requirement. Immediately after the *Shelby County* decision, North Carolina enacted omnibus House Bill 589, which imposed voter identification requirements, cut short

early voting by a week, prohibited local election boards
from keeping the polls open on the final Saturday after-
noon before elections, eliminated same-day voter registra-
tion, terminated preregistration of 16- and 17-year olds in
high schools, authorized any registered voter to challenge
ballots cast early or on Election Day, and barred votes cast
in the wrong precinct from being counted at all.  These
measures likely would not have survived federal preclear-
ance.  See 2014 WL 4852113, *15 (CA4 2014).  The Court
of Appeals determined that at least two of the measures—
elimination of same-day registration and termination of
out-of-precinct voting—risked significantly reducing op-
portunities for black voters to exercise the franchise in
violation of §2 of the Voting Rights Act.  I would not dis-
place that record-based reasoned judgment.

North Carolina places heavy reliance on the fact that
African-American turnout during the 2014 primary elec-
tion, governed by House Bill 589, increased compared to
the 2010 primary election, governed by the prior law.
Application 29.  As the District Court recognized, however,
that comparison "is of limited significance because of the
many noted differences between primaries and general
elections."  *North Carolina State Conference of the NAACP*
v. *McCory*, 997 F. Supp. 2d 322, 375, n. 72 (MDNC 2014).
Unlike turnout in general elections during Presidential
election years, turnout in off-year primary elections is
highly sensitive to factors likely to vary from election to
election.  For example, in the 2014 primary election, North
Carolina had contests for three open congressional seats,
including in one of North Carolina's two majority-
nonwhite congressional districts.  There were no contests
for open seats in 2010.  An unprecedented $2 million was
spent on a 2014 primary race for the State Supreme
Court.  And the race for U. S. Senate that year drew sig-
nificant attention and higher campaign spending in antic-
ipation of a general election expected to be contested more

Appeal: 14-1845    Doc: 89      Filed: 10/09/2014    Pg: 3 of 3

vigorously than was the Senate seat in 2010. See Plaintiffs' Joint App. to Reply Brief in No. 13–658 (MDNC), Doc. 164, pp. 2783–2788, 2805–2806.

Accordingly, I would retain, pending full adjudication of this case, the preliminary injunction ordered by the Court of Appeals.